Perrin *v.* Granger et al.

PHILANDER PERRIN, *Adm'r v.* E. WELLS GRANGER *et al.*

*Rights of pew holders.   Remedy for disturbance.   Requisites to sell as forfeited.   Plaintiff's capacity to sue.*

The pew holders in the ordinary cases of meeting houses or churches, built by incorporations under the statute, have only a right of occupancy in their seats, subject to the superior rights of the society owning the pew.

The appropriate remedy in all such cases for a mere disturbance in the enjoyment of the right, not amounting to the destruction of the pew, is trespass on the case.

In order to justify the sale of a pew for non-payment of an assessment laid by the society owning the church, it is requisite that the shares be defined, the assessment be laid on the shares, and that the assessment and forfeiture or sale be in conformity with the provisions of the constitution and by-laws of the society.

The collector who makes a void sale, is jointly liable to this action with the purchaser under the sale who alone actually disturbs the owner ; both are principals.

An administrator, before distribution or surrender, may occupy a pew, belonging to his intestate's estate, *himself* or lease it, and is injured by any disturbance, interfering with its use or the obtaining rent for it from others, in his

representative character, and in that capacity may declare for an injury since the death of the intestate.

*It seems* that he may declare in his own name without setting up his representative character.

CASE for the disturbance of the plaintiff *as administrator* of Lebbeus Edgerton, in the use and enjoyment of *himself* and *family* of a pew in the Union Meeting House in Randolph, belonging to the estate of his intestate. Plea the general issue, with notice of special matter, to the effect that in 1836 an association was formed by certain residents of Randolph, under the act of 1797, for the support of the gospel, a constitution was adopted, and a meeting house built and accepted by the society; that by the constitution the society had power to tax the proprietors to repair the house; that in 1853 the house was in need of repairs, and at a meeting duly called, it had been voted to make them; that said repairs were made, and that at another meeting duly warned and held in 1854, the society voted to raise money to pay for the same; that a tax bill was made out, assessed against the owners upon the original cost of the pews, and put into the hands of the collector; that the pew in question belonged to the estate of the intestate; that the plaintiff was his administrator, and that upon his refusal to pay said tax, the collector, upon notice, and in accordance with article sixteenth of the constitution of the association hereinafter mentioned, had sold the same to the defendant, Cheedle, as the highest bidder, at public auction.

Trial by the court, at the June Term, 1859,—BARRETT, J., presiding.

It was admitted that Cheedle had occupied said pew under the purchase stated in the notice, and there was no evidence of any other disturbance by either of the defendants, except the act of sale by the collector, and such occupancy by Cheedle.

The plaintiff's evidence tended to prove that Egerton died in 1846; that the settlement of his estate was closed; that the plaintiff was his administrator; that Egerton became the owner of the pew in question at the building of the house; that it belonged to his estate at the time of the sale, and that the administrator had never disposed of it.

The defendants then gave evidence to prove the facts set up in

their notice, and for this purpose introduced the constitution and records of the association.

The only articles of the constitution, providing for a tax or meterial to the questions raised in the case were the following :

ARTICLE 11. " That said proprietors shall have a right, at a meeting warned for that purpose, notifying the business to be acted upon, to tax themselves to raise money to repair said house when out of repair, provided that two-thirds of the proprietors present vote in favor."

And article 16th in amendment of article 11th, which provided for the manner of making the assessment, of making out the tax bill, and the method of selling the interest of any person in the house upon refusal to pay his tax.

It appeared from the records that a meeting of the association, called agreeably to article 11th, was held on the 12th day of April, 1853, when the following vote was passed : " Voted that the prudential committee proceed immediately to put the meeting house in repair."

" Voted to tax the owners of the several pews to defray the expenses of said repairs after applying such subscriptions as may be obtained."

And at another meeting, duly called for that purpose, according to article 11th, and held on the 2d day of January, 1854, the association voted as follows :

" Voted to raise money not to exceed one hundred and seventy-five dollars, to pay the debts against the Union Society, and to make further repairs, said tax to be at the disposal of the prudential committee."

It not appearing by the records that this vote was passed by two-thirds of the proprietors, the association, on the 24th day of January, 1859, passed a preamble and resolution, setting forth that this omission existed in the records, and that said vote was unanimous and authorizing the present or former clerk to perfect the records of that meeting according to the fact by making the correction. This the former clerk had done since the former trial of this case, and after he had gone out of office, by interlining the words " by two-thirds of the proprietors present "

The defendant introduced the tax bill on which the sale was

made, and which, so far as it relates to the pew in question, and the certificate of the prudential committee thereto, is as follows :

|  | Present owner. | Original owner. | Cost. | Tax. |
|---|---|---|---|---|
| "Pew 26. | P. Perrin, Adm'r ; | Lebbeus Egerton. | $68 00 | $5 03 |

" The above is a true bill of seven and four-tenths cents on the dollar of the original sale of pews, in the Union Meeting House in Randolph Centre Village, raised by vote January 2, 1854."

It appeared that the defendant, Granger, was collector at the time of the sale of this pew, and that he sold the same to Cheedle in the manner prescribed in said article 16th, in amendment of article 11th, and gave him a deed thereof. The testimony also tended to prove that the plaintiff, when called upon, uniformly refused to pay this tax. The plaintiff proved the alteration of the record of the vote of January 2, 1854, as stated above, and the defendants introduced the former clerk to prove that this vote was unanimous ; that the part supplied was omitted by mistake, and the alteration had been made agreeably to the resolution of January 24, 1859.

The defendants claimed there was no proof to warrant judgment against the defendant, Granger, and insisted that the plaintiff, as administrator, could not maintain this action upon the proof for a disturbance of his use and control of the pew, because it belonged to the estate of Egerton, and that the proceedings and sale by Granger were a justification to both defendants. The court decided *pro forma* that the plaintiff was entitled to recover, and rendered judgment for one dollar damages ; to which decision the defendants excepted.

*C. W. Clark,* for the plaintiff.

*Wm. Hebard* and *J. B. Hutchinson,* for the defendants.

REDFIELD, Ch. J. I. This case upon the merits of the defence, seems to us to be substantially the same as it was when before this court and decided two years ago ; 30 Vt. 595. It was then held that upon the constitution and by-laws of the society the tax was not so voted and assessed, as to justify the sale of the pew in question.

This is there put upon many grounds, not attempted to be obviated now. 1. The statute requires the shares to be defined; 2, the assessments to be upon the shares, and 3, the forfeiture or sale as well as the assessment, to be in conformity with the provisions of the constitution and by-laws of the corporation. Nothing of this appears in the present case. We understand the 16th article in amendment of the 11th, was adopted in 1856, after the vote and assessment of this tax. It could not, therefore affect the rights of these parties. We think, therefore, that the former decision of this court concludes this part of the case.

II. In regard to the objection to the form of the action, we think the doctrine established, upon careful consideration, and elaborate discussion in *Bakersfield Congregational Society* v. *Baxter*, 15 Vt. 119, and *Kellogg* v. *Dickinson*, 18 Vt. 266, must be considered as settled in this State, that in ordinary cases the pew holders in meeting houses, or churches, built by incorporations under the statute, have only a right of occupancy in their seats, subject to the superior rights of the society owning the fee of the church, and worshiping in it. This is much the same estate which the holder of a pew has in England, in the established church, where the fee of the church is in the rector, and the pew holder has only an easement, or incorporeal hereditament.

In all such cases the appropriate remedy for a disturbance in the enjoyment of the right is trespass on the case. That indeed is the only remedy for the disturbance of the enjoyment of such rights ordinarily. The right to occupy a pew is such that in some cases it is held that trespass or ejectment will lie. But not for a mere disturbance in the use, such as is proved in the present case. In *Kellogg* v. *Dickinson, supra,* it is expressly decided that case is the proper remedy for the owner of a pew in a meeting house against one who disturbed him in the possession of his pew unlawfully.

We think both defendants must be regarded as jointly liable for the disturbance, one being accessory to the act of the other; both are principals and liable to the action.

We think the plaintiff may well maintain the action. As is said in this case, in the 30th Vt. 598, it would seem as if he is the only person who could sue, unless it be the heirs. And so long

as the heirs acquiesce in the suit being brought by the adminis-
trator, courts presume it rightful, unless it is shown that the prop-
erty has been distributed to the heirs, or at all events, gone into
their actual possession and control ; *McFarland, Adm'r,* v. *Stone,*
17 Vt. 165. The defendants have no interest in this question, as
between the heirs and administrator, except to have the suit in
such form as to be a bar to a future action. The administrator
until he surrenders the property to the heirs, may occupy a pew
himself or lease it. He is, therefore, injured, and in his repre-
sentative capacity, by any disturbance in the possession, which
would interfere both with the use and the obtaining rent from
others. He may probably bring the suit in his own name with-
out setting forth the capacity in which he holds the possession,
or he may declare, as administrator, for an injury since the decease
of the intestate, as he has done in the present case. In such
case his letters of administration are requisite to be shown as part
of his title, while in other cases his representative character is
admitted unless denied by special plea, either in bar, or in abate-
ment ; *Manwell, Adm'r,* v. *Briggs,* 17 Vt. 176 ; *Trask* v. *Donog-
hue,* 1 Aikens 370 ; *Clapp* v. *Bradley,* 1 Vt. 151 ; *Aldis, Ex.* v.
*Burdick,* 8 Vt. 26.

The form of the declaration in some respects is not very appro-
priate to the specific injury sustained, but we think it sufficient
upon the general issue and notice of justification. It sufficiently
informs the defendant of the cause of action shown on trial.

Judgment affirmed.